IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(BOSTON)

| | |
|---|---|
| **STACEY and SUSAN SCHACTER,**<br>As Representatives of All Persons Similarly<br>Situated,<br><br>       Plaintiffs,<br>v.<br><br>**CIRCUIT CITY STORES, INC.,**<br><br>       Defendant. | Civil Action<br>No. 05 CV 12456 NMG |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Stacey and Susan Schacter hereby oppose Defendant's Motion to Dismiss on behalf of themselves and all other persons who (a) purchased a CityAdvantage Protection Plan from Circuit City Stores, Inc. (the "Plan") in conjunction with purchasing a product from Circuit City, (b) replaced or were reimbursed for a product covered by the Warranty Plan (the "Product Reimbursement/Replacement"), and (c) were damaged when Circuit City prematurely terminated the Plan at the time of the Product Reimbursement/Replacement.

## FACTS

Circuit City sold to its customers, in conjunction with the sale of its retail products, a Plan providing warranty coverage (in addition to any manufacturer warranties) for fixed periods of 2, 4 and 5 years (the "Term"). (Complaint at ¶7) The cost of a Plan depended upon the cost of the product warranted and the length of the Term. (Complaint at ¶7) Circuit City represented in its description of the Plan provided to customers that they would receive protection under the Plan for the entire Term. (Complaint at ¶8) At the purchase of the product and the Plan, Circuit City confirmed the

Plan and the length of the Term with a sales receipt (the "Receipt") showing the purchase of the Plan and a pamphlet (the "Pamphlet") indicating the start date of the Plan and the full term of the Term. (Complaint at ¶9)  However, neither the Receipt nor the Pamphlet disclosed that Circuit City intended to terminate the Plan upon a Product Replacement/Reimbursement without a refund for the time remaining on the Term or applying the unexpired portion of the Term to the replacement product. (Complaint at ¶9)  It was only after a customer purchased the Plan that s/he had the option of going on-line to view a copy of what Circuit City referred to as the Comprehensive Service Guide (the "Guide") which stated, in contradiction to the Receipt and Pamphlet, that "Coverage ends as of the date on your sales receipt or upon receipt of your replacement, whichever comes first." (Complaint at ¶10)  Circuit City did not provide a copy of the Guide to customers at the point of sale. (Complaint at ¶10)

On April 18, 2004 at the Circuit City store in Hanover, MA, the Schacters purchased a cordless telephone and a two-year Plan covering the telephone for an additional $19.98. (Complaint at ¶11)  At the time of their purchase, they received the Receipt and a Pamphlet but did not receive a Guide. (Complaint at ¶11)  According to the Receipt, the Schacters' Plan expired on April 24, 2006. (Complaint at ¶12)  The Pamphlet represented that the Term would typically extend past the life of the manufacturer's warranty and that this was a reason for consumers like the Schacters to purchase the Plan. (Complaint at ¶12)  The Pamphlet did not disclose that a Product Reimbursement/Replacement terminated the Plan. (Complaint at ¶12)

During the term of their Plan, the Schacters' cordless phone broke, the Schacters returned the portable phone to the Hanover Circuit City Store and Circuit City reimbursed

them for the phone and the sales taxes associated with its purchase.  (Complaint at ¶13)

The Schacters inquired as to whether they would also be reimbursed for the remainder of

the Term on the Plan plus sales tax and they were then informed, for the first time, that

the Plan was terminated by the Product Reimbursement/Replacement despite the fact that

they had purchased a two-year Plan that still had time remaining until April 24, 2006.

(Complaint at ¶14)

## ARGUMENT

### A.    Standard of Review

A "complaint will survive [a motion to dismiss] as long as it pleads sufficient

facts to warrant recovery on any cognizable theory of the case." *Tompkins v. United

Healthcare of New England, Inc.,* 203 F.3d 90, 93 (1st Cir. 2000) (citations omitted).

Plaintiffs resisting a motion to dismiss are entitled to every reasonable inference in their

favor. *See Cooperman v. Individual, Inc.,* 171 F.3d 43, 48 (1st Cir. 1999).

### B.    Plaintiffs Have Adequately Alleged Breach of Contract

#### 1.    Plaintiffs' Allegations of Facts Support Their Claim For Relief

Plaintiffs have alleged that a written contract was entered into between Plaintiffs

and the Defendant consisting of the Receipt and the Pamphlet for the purchase and sale of

the Plan. (Complaint at ¶28)  These were the only documents delivered by Circuit City to

the Plaintiffs at the time of the purchase of the Plan.  (Complaint at ¶9)  The Receipt

specifically sets forth the time the Plan is effective, with the exact start date and exact

expiration date, with no provision for early termination.  (Complaint at ¶9)

The Receipt, delivered at the time of purchase, provided a definite Term with an

exact start date and an exact expiry date.  Plaintiffs' Receipt specifically provided as

follows:

The Cityadvantage Protection Plan for Small/Portable Electronics (RPP) for the PAN KXTGA270S starts 04/24/04 and expires 04/24/06.

The basic terms in a written sales contract include: (i) the parties to the contract, (ii) the price, (iii) a description of the item purchased, and (iv) if time is an element, the duration. Duration is a material term of a contract. *Affordable Elegance Travel, Inc., v. Worldspan L.P.,* 774 A.2d 320 (D.C. 2001)

The Receipt is the one document specific to the sale between the Schacters and Circuit City. It contains the four elements of a written sales contract. That document specifically provides for a two-year duration which "starts 04/24/04 and expires 04/24/06."

Defendant argues that the Guide, which was **never delivered** by Circuit City to the Plaintiffs and did not accompany the Receipt, permitted Circuit City to unilaterally modify the Receipt. Defendant claims this was done by a general description contained in the Guide, applicable to Cityadvantage Protection Plans generally permitting Circuit City to terminate the Plans prior to the expiry date. The language is contradictory to the specific language relating to the duration of the Term in the Receipt given to the Schacters by Circuit City at the time of purchase and sale of the Plan and did not accompany the Receipt.

Circuit City's argument fails for the following reasons:

(a)    **Plaintiff's Contract Consists of the Offer and Acceptance**

Essential elements of any written contract are (i) offer, and (ii) acceptance. Circuit City, through advertisements and promotions offered, in fact touted, its two-year

warranty.   Upon the sale of the Plan, Circuit City delivered the Receipt to the Schacters which contained a two-year warranty duration with a specific start date and a specific expiry date with no rights of termination.   This is what Circuit City offered and this is what the Schacters accepted.   This was the meeting of the minds.

**(b)      The Guide Did Not Accompany the Receipt**

The Receipt succinctly states what constitutes the contract between the Plaintiffs and the Defendant as follows:

> ** This sales receipt and the accompanying terms and conditions constitute your Cityadvantage Protection Plan.

The Plaintiffs have pled that the only document accompanying the Receipt was the Pamphlet at the time of purchase.   (Complaint at ¶11)   The Guide did not accompany the Receipt.   (Complaint at ¶11)   In fact, the Guide, as pled by the Plaintiffs, was never delivered by Circuit City to the Plaintiffs.   (Complaint at ¶11)   Defendant's own document specifically limits the contract to the Receipt and the accompanying document, being the Pamphlet.   (Complaint at ¶12)

**(c)      Unilateral Alteration of a Material Term of a Contract is Not Permissible**

Even assuming delivery of the Guide, a party is not permitted to unilaterally materially alter an agreed term of a contract without acceptance by the counterparty. Unlike the cases presented in Defendant's memorandum, which refer to additional terms and conditions, which supplement terms and conditions in the delivered document, the Guide unilaterally materially alters a specific agreed term of the duration of the contract in the underlying Receipt.

ALM GL ch. 106, UCC § 2-207 (2), "Additional Terms in Acceptance," provides in relevant part:

"The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) **they materially alter it** [emphasis added];

In the case at bar, one party is not a merchant so this provision is not directly applicable. The principle of law is the same however. When two parties have a meeting of the minds, additional proposed terms do not become part of the contract when the additional terms have the effect of materially altering the agreement. Indisputably, the unilateral adjustment of the duration of the warranty is a material alteration. If this would not be acceptable as fair dealings under the Uniform Commercial Code in the less-regulated commercial arena of transactions between merchants with equal bargaining power, it certainly is not fair dealing when a consumer, with no bargaining power, is contracting with a national chain merchant. By attempting to recast the two-year Warranty as something that may only last thirty-one (31) days, the Defendant attempts to do more than modify the Warranty, they eviscerate it.

**(d)      A Specific Contract Term Will Be Enforced Versus a Conflicting General Term**

Even assuming delivery of the Guide, a basic principle of contract drafting is that a more specific contract term will be enforced over a less specific contradictory term. Restatement (Second) of Contracts § 203(c) & cmt. e (1981); *See Newharbor Partners, Inc. v. F.D. Rich Co., Inc.*, 961 F.2d 294, 299 (1st Cir. 1992); *Arcari v. Marder*, 225 B.R. 253 (D. Mass. 1998); *Canam Steel Corp. v. Bowdoin Const. Corp.*, 34 Mass. App. Ct.

943, 944 (1993). The most specific terms relating to the Schacters' purchase of the Plan are contained in the Receipt that the Schacters actually received. The Receipt contains the following basic elements (i) the parties, including the Schacters as purchaser and Circuit City as seller, (ii) the specific Plan purchased, (iii) the price of that specific Plan, and (iv) the exact duration of the Plan with the exact start date of 04/24/04 and the exact expiration date of 04/24/06. The specific terms in the Receipt relating to the transaction between the Schacters and Circuit City under contract interpretation rules are to be enforced rather than contradicting general terms contained in a general Guide for the various Cityadvantage Protection Plans which was never delivered to the Schacters.

**(e)**    **Ambiguities are Construed Against the Drafter, Particularly in Contracts Between Parties With Unequal Bargaining Power**

Even assuming delivery of the Guide, another basic tenant of contract construction is also applicable: when a written contract is ambiguous, it is interpreted against the drafter of the written contract. Restatement (Second) of Contracts § 206 (1981); *See Langone v. USCO Distribution Services, Inc.,* 389 F.Supp.2d 91, 98 (D. Mass. 2005); *Delorenzo v. Tzokos,* 2001 Mass. App. Div. 179 at *2.

When interpreting a contract, the court must "give effect to the parties' intention and construe the language to give it reasonable meaning wherever possible." (*See BayBank Middlesex v. 1200 Beacon Properties, Inc.* 760 F.Supp. 957, 963 (D. Mass. 1991)) Where there is an ambiguity in a term of the contract, the meaning of the term becomes a question for the fact finder. *See Den Norske Bank AS v. First National Bank of Boston,* 75 F.3d 49, 52 (1st Cir. 1996); *In re Cadkey Corp.,* 2005 WL 958253, at *2 (D. Mass, 2005).

The first question for the court is to determine whether a contract ambiguity exists. See: *Wyner v. North American Specialty Insurance Co.*, 78 F.3d 752, 754 (1st Cir. 1996); *BayBank Middlesex, Id.* at 963. A contract term is considered ambiguous "where an agreement's terms are <u>inconsistent</u> [emphasis added] on their face." *BayBank Middlesex, supra.* See: *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F.Supp. 363, 370 (D. Mass. 1991). In the case at bar, there are clearly differing and inconsistent terms.

The Receipt states the term is for two years, with a specific start date and a specific expiry date, with no provision for early termination. The more general Guide states the two years can be terminated upon replacement of the product or refund of the purchase price. These terms are directly contradictory and create ambiguity. This is a contract between a consumer, with no bargaining power and no ability to negotiate or change the form written contract, and a large corporation with resources to hire experienced lawyers who drafted the form written contracts, in this case, that contain ambiguous terms. Courts have uniformly held that large corporations with the resources to hire top lawyers are expected to produce clear, unambiguous documents, and where contracts are ambiguous, the ambiguity is read against the drafter. The ambiguous written contract should be interpreted in favor of the Plaintiffs and against the drafter. *See Merrimack Valley Nat. Bank v. Baird*, 372 Mass. 721, 724 (1977)

### 2. **Defendant's Arguments Do Not Apply to the Case At Bar**

Defendant argues that the Guide was incorporated into the contract as a "money now, terms later" transaction. The cases cited by Defendant do not compel this conclusion. No Massachusetts case holds that a "money now, terms later" transaction is

acceptable when a consumer is forced to jump through additional informational hurdles subsequent to the purchase of the goods. The two Massachusetts cases to directly consider the issue of "money now, terms later" transactions, *I. Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F. Supp. 2d 328 (D. Mass. 2002), and *1-A Equipment Co. v. Icode, Inc.*, 2003 Mass. App. Div. 30, both involve very different facts. In *I. Lan Sys., Inc.*, 183 F. Supp. 2d 328, the transaction involved two commercial entities, and an amount in excess of $85,000. *Id. at* 330. Importantly, the terms of the conditions to which I.Lan had agreed were included with the goods. *Id.* I.Lan was not forced to pursue the additional terms -- they were included. The disputed term was a liability waiver. In *1-A Equipment Co.*, both parties were also commercial entities, and the transaction was for an amount in excess of $24,000. 2003 Mass. App. Div. at 31-32. Again, the additional terms were included with the goods. *Id.* at 32. The buyer was not required to pursue the additional terms. In *1-A Equipment,* the disputed term was a forum selection clause. *Id.* at 31. Neither a forum selection clause nor a liability waiver is as central to a software purchase as a the duration of a warranty is to a warranty purchase.

In addition, in this case, unlike the cases cited by the Defendant, the additional terms (i) unilaterally materially altered an agreed essential term of the contract, being the duration, (ii) directly contradicted a specific term of the document specific to the transaction by a general term relating to Defendant's warranty contracts generally, and (iii) created ambiguity due to the direct conflict in terms created by the drafter with unequal bargaining power.

The Defendant also argues that the "nature" of the Plan requires termination. The Plan provides for replacement or reimbursement of defective product. Somehow,

Defendant construes reimbursement by definition as requiring expiration of the Plan. This argument also fails and actually makes no sense. The reimbursement option would include reimbursement for the purchase price of the product, the sales tax, and the unexpired Term of the Plan. Circuit City failed and refused to reimburse Plaintiffs for the unexpired Term of the Plan or apply the unused portion of the Warranty to the replacement product.

### 3.    Summary

The pled facts fully support the legal claims of the Plaintiffs. The Receipt defined the Plan as the Receipt and accompanying documents.   The only document accompanying the Receipt was the Pamphlet. (Complaint at.¶11)   The Guide was never delivered to the Plaintiffs and did not accompany the Receipt. (Complaint at ¶11)  Circuit City advertised and touted the Plan as being warranty protection for two years.   The Receipt given for the transaction between the Schacters and Circuit City specifically set forth a two-year warranty with an exact start date and expiry date with no right of termination.  The Guide materially altered an essential agreed term of the duration of the Plan.   (Complaint at ¶10)    The Receipt was the document specific to the transaction because it contained the parties, the price, the Plan purchased, and the duration, and by contract construction rules, is enforced versus contradictory, less specific terms.   The Plan, if the Guide is assumed to be delivered, is ambiguous as to the time period of effectiveness.  Circuit City is a large corporation selling to individual consumers under form agreements which consumers have no ability to negotiate.  Circuit City drafted the form contracts.  Circuit City has the resources, legal expertise, or ability to acquire the legal expertise to make the form contracts clear and unambiguous.  Ambiguity in

contracts between large corporations and consumers with unequal bargaining power are always enforced against the drafter.

Defendant offers numerous models of phones for $15.00 or less. Defendant's salespeople aggressively push their two-year Warranty when a customer purchases such an item. The Warranty is priced at $20.00. Under Defendant's proposed interpretation of the Warranty, once the customer's phone needs to be repaired or replaced, the Warranty is terminated. This would result in the customer paying $20.00 for a $15.00 phone. How many customers would spend $20.00 to replace a $15.00 phone? This absurd and unreasonable result would not occur if there were a true meeting of the minds. By promising a two-year Warranty, Defendant understands that customers expect a two-year Warranty. This expectation is confirmed by the Receipt, which specifies a two-year period.

In addition, Circuit City could have easily, clearly, and unambiguously described the expiration of the Term in the Receipt as the earlier of (i) two years, or (ii) refund, or (iii) replacement. Circuit City chose not to do so, either out of carelessness, recklessness, or in an intentional attempt to deceive consumers into buying the Plan due to the fixed length of the Plan and the possibility of early termination. Circuit City likewise advertised the warranty as a two-year Plan. The sale of warranty plans is highly profitable and competitive. Circuit City had a financial motive to make the Plan appear to be as attractive as possible. Under such circumstances, the ambiguity created by the Guide should be enforced in favor of the consumer and against Circuit City.

Circuit City's conduct is actionable and the claims of Plaintiffs should not be dismissed. Plaintiffs have pled sufficient facts to support their claim for relief. There is a

sufficient factual basis for Plaintiffs to prevail on their claims for breach of contract. Thus, there are insufficient grounds to dismiss this claim.

**C.    Plaintiffs' MGLC 93A Claim Survives Regardless of Whether Defendant Breached Its Contract with Plaintiffs**

Defendant relies on a series of selective case quotations to argue erroneously that it is not liable under MGLC 93A because it did not breach the contract at issue.  Contrary to Defendant's arguments, the law is established that a party is not exonerated from MGLC 93A liability simply because there has been no breach of contract. *NASCO, Inc. v. Public Storage, Inc.*, 127 F.3d 148, 152 (1st Cir. 1997) (citations omitted).  Instead, a defendant violates MGLC 93A by making false and misleading statements in order to induce a plaintiff to enter into an agreement designed to defraud him.  *Jurgens v. Abraham*, 616 F.Supp. 1381, 1386 (D. Mass. 1985) (citations omitted).  In fact, Defendant would be liable under MGLC 93A even if its misrepresentations inducing Plaintiffs into entering into the Plan were merely negligent.  *See Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 61-62 (2004) (citations omitted).

The practice by which Defendant induced Plaintiffs to enter into the Plan is "an unfair or deceptive act or practice" within the meaning of MGLC 93A, §9, because such practice has the tendency to deceive a reasonable consumer.  *See Aspinall v. Philip Morris Companies, Inc.*, 442 Mass. 381 (2004).  "[A] practice is 'deceptive,' for purposes of G.L. c. 93A, 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"  *Aspinall*, 442 Mass. at 394 (citations omitted).  "A successful G.L. c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the misrepresentation . . . or that the

defendant intended to deceive the plaintiff . . . or even knowledge on the part of the defendant that the representation was false." *Aspinall,* 442 Mass. at 394 (citations omitted).

"In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which the act or practice might reasonably be expected to have on the general public.'" *Aspinall,* 442 Mass. at 394 (citations omitted). "[A]dvertising need not be totally false in order to be deemed deceptive." *Aspinall,* 442 Mass. at 394 (citations omitted). "The criticized advertising may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." *Aspinall,* 442 Mass. at 395 (citations omitted).[1]

The sequence of events alleged in the Complaint demonstrate that the practice of selling Plans that Defendant engaged in was deceptive within the meaning of MGLC 93A because "'it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" *Aspinall,* 442 Mass. at 394 (citations omitted). First, Plaintiffs purchased a cordless phone and the Plan simultaneously on April 18, 2004. Second, at the time of that purchase, they received the Receipt stating

> The Cityadvantage Protection Plan for Small/Portable Electronics (RPP) for the [telephone] **starts 04/24/04 and expires 04/24/06** . . . Refer to the Comprehensive Service Guide for information and Terms and Conditions.
>
> This sales receipt and the accompanying terms and conditions constitute your Cityadvantage Protection Plan.

---

[1] Although the *Aspinall* case involved deceptive advertising, the Supreme Judicial Court clearly understood that MGLC 93A prohibits all deceptive acts or practices regardless of whether they involve advertising *per se.* *See Aspinall,* 442 Mass. at 399 ("The circumstances in the *Leardi* case, in which members of the plaintiff class challenged a landlord's efforts to mislead tenants by deceptive use of language in a lease, were essentially no different from the [deceptive advertising] case before us.").

Pound Exh. 1 (emphasis added).   Neither the Receipt nor the Pamphlet gave any indication that the Guide contradicted the Receipt and said that the Plan would terminate on replacement of the phone even if less than two years had passed.  Third, Defendant did not provide Plaintiffs with a copy of the Guide at the time they purchased the phone and Plan.

Even if the Court were to find that Circuit City did not breach the Plan and thus Plaintiffs were not entitled to damages for breach of contract, they would still be entitled to the greater of actual damages or statutory damages for Defendant's violation of MGLC 93A.  *See* MGLC 93A, §9(3).  In this case, actual damages would equal the difference between the price paid for the Plan and its actual fair market value.  *See Aspinall*, 442 Mass. at 399 ("Thus the exact amount of [actual] damages may be determined by multiplying the number of cigarettes sold . . . by the difference between the price paid and the actual fair market value.").  The Supreme Judicial Court described this measure of actual damages as "a variation on the traditional 'benefit of the bargain' rule that awards a defrauded party the monetary difference between the actual value of the product at the time of the purchase and what its value would have been if the representations had been true." *Aspinall*, 442 Mass. at 399.  Alternatively, "[i]n the event that the plaintiffs are unsuccessful in their attempt to prove actual damages, however, they will be entitled to recover statutory damages under G.L. c. 93A, §9(3)." *Aspinall*, 442 Mass. at 400.

Defendant has not – and cannot – offer a reasonable justification for failing to disclose to consumers the material fact that it intended to terminate the Plan prior to the term stated in the Receipt if a Product Replacement/Reimbursement occurred.  Instead, Circuit City makes the incredible argument that the burden is on consumers to determine

whether the Guide that Defendant failed to provide at the point of sale contradicted the representations and/or promises contained in the Receipt that was provided at the point of sale.  Defendant's argument fails because the "overall purpose of c. 93A is that of 'providing proper disclosure of information and a more equitable balance in the relationship of consumers to persons conducting business activities.'"  *Purity Supreme, Inc. v. Attorney General,* 380 Mass. 762, 776 (1980) (citations omitted).

**D.     Plaintiffs' Other Claims Are Viable**

 **2.     Promissory Estoppel (Count II) Should Not be Dismissed Because Circuit City Made Promises with Respect to the Duration of the Plan**

 Circuit City claims that it never made a promise that Plaintiffs would be entitled to coverage under the Plan for the full Term as set forth in the Receipt.  The elements of promissory estoppel are: (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promissee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.  *Loranger Constr. Corp. v. E.F. Hauserman Co.,* 6 Mass. App. Ct. 152, 154 (1978).  An action for promissory estoppel is analogous to a contract action.  *R.I. Hospital Trust Nat'l Bank v. Varadian,* 419 Mass. 841, 850 (1995).  The plaintiff, in an action for promissory estoppel, must prove all elements that would be necessary to satisfy a contract claim except for consideration, *Id.*  Accordingly, the promise that is allegedly relied upon by the plaintiff must rise to the level of an enforceable promise in the contractual sense.  *See Vakil v. Anesthesiology Assoc. of Taunton, Inc.,* 51 Mass. App. Ct. 114, 121 (2001).

 Therefore, the issue becomes did Defendant make promises certain to the Plaintiffs to become enforceable.  Here, Defendant promises a warranty of two years.  It

advertises and promotes its two-year warranty without disclosing any possibility of early termination. It then promises in the Receipt a two-year warranty stating the exact start date and exact expiry date to induce the customer to purchase the extended warranty.

Plaintiffs have alleged that Circuit City promised that they would be entitled to coverage under the Plan for the full Term as set forth in the Receipt. (Complaint at ¶33) Plaintiffs have also alleged, that as a result of the promise, Circuit City should have reasonably expected to induce Plaintiffs and Class Members, and in fact did induce Plaintiffs and Class Members, to purchase the Plan. (Complaint at ¶¶33-34)   Plaintiffs allege the promise was included in the plain language of the Receipt (Complaint at ¶33) Circuit City's argument for dismissal is contradicted by the plain language of the Complaint.

Circuit City's argument is contradicted by the Complaint allegations and also by the documents attached to the Complaint. Again, the reasonableness of reliance is a question of fact that must be reserved for the jury. *Jamison v. American Showa, Inc.,* 2000 WL 1404, \*13 (stating with respect to a promissory estoppel claim, that the reasonableness of one's reliance is a question of fact for the jury).

Plaintiffs have pled sufficient facts to support their claim for relief and there are insufficient grounds to dismiss this action.

**2.     Defendant Has Unjustly Enriched Itself at Plaintiffs' Expense**

Circuit City erroneously argues for dismissing the Unjust Enrichment Claim (Count III) based on the incorrect analysis that the relationship between Plaintiffs and itself is solely contractual. To the contrary, regardless of what happens to their contract claim, Plaintiffs still have the claim that they were deceived into entering into the Plan

whose actual value was less than what they paid for it.  Since Circuit City initially promised and/or misrepresented to Plaintiffs that they would receive replacement protection coverage for two years but later contradicted that misrepresentation, Circuit City has wrongfully retained Plaintiffs' money in an amount equal to the difference between what they paid for the Plan and what the Plan was actually worth.  Therefore, Plaintiffs have stated a claim for unjust enrichment.  *See, e.g., Santagate v. Tower,* 64 Mass. App. Ct. 324, 329 (2005).

Defendant's attempt to dismiss the unjust enrichment claim on procedural grounds should also be denied because it is irrelevant whether Plaintiffs will have an adequate remedy at law for the damages they have suffered.  *See Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 700 (1975) (refusing to dismiss equitable remedy simply because legal remedy might be available).  Even if adequacy of a legal remedy is relevant, it is impossible to determine at this early stage of the litigation whether Plaintiffs will have an adequate remedy at law.  *See, e.g., Popponesset Beach Assn. v. Marchillo,* 39 Mass. App. Ct. 586, 593 (1996) (concluding only after trial on the merits that claim for unjust enrichment did not lie where plaintiffs had an adequate remedy at law).

### 3.      Defendant Has Wrongfully Converted Plaintiffs' Property

Similarly, Circuit City erroneously argues for dismissing the Conversion Claim (Count IV) based on the incorrect analysis that the relationship between Plaintiffs and itself is solely contractual.  To the contrary, regardless of what happens to their contract claim, Plaintiffs still have the claim that they were deceived into entering into the Plan whose actual value was less than what they paid for it.  Since Circuit City initially

promised and/or misrepresented to Plaintiffs that they would receive replacement protection coverage for two years but later contradicted that misrepresentation, Circuit City has wrongfully retained Plaintiffs' money in an amount equal to the difference between what they paid for the Plan and what the Plan was actually worth. Because Plaintiffs have alleged that Circuit City has wrongfully exercised dominion over their property by refusing to return that difference in value, they have stated a claim for conversion. *See Abington National Bank v. Ashwood Homes, Inc.,* 19 Mass. App. Ct. 503, 507 (1985) (listing elements of claim for conversion.)

## CONCLUSION

The Court should deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted,

DATED: 10 February 2006

_____/s/_____
John Peter Zavez (#555721)
Noah Rosmarin (#630632)
ADKINS KELSTON & ZAVEZ, P.C.
90 Canal Street
Boston, MA  02114
Tel: (617) 367-1040
Fax:  (617) 742-8280

STATMAN, HARRIS, SIEGEL & EYRICH, LLC
Alan J. Statman (0012045)
Jeffrey P. Harris (0023006)
Colleen M. Hegge (0038506) (of counsel)
2900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202
Phone: (513) 621-2666
Fax: (513) 621-4896

## CERTIFICATE OF SERVICE
I certify that on 10 February 2006, I caused a true copy of the foregoing document to be served electronically via the Court's electronic filing system on defense counsel.
_____/s/_____
John Peter Zavez